Opinion by
 

 Woodside, J.,
 

 This is an appeal from a sentence imposed for burglary after motions in arrest of judgment and for a new trial were denied. The defendant had been convicted after a jury trial.
 

 Two police officers testified that on March 11, 1963, the defendant had voluntarily appeared before them at the Blakely Barracks to deny participation in burglaries with which his name had been connected. He took a lie detector test which supported his denial of complicity in any of these burglaries, all of which had been committed in Old Forge. After further question
 
 *568
 
 ing by the officers, however, the defendant admitted that in January or February, 1961, he had participated in a burglary by acting as a lookout while two accomplices, Amantea and Sciandra, entered a doctor’s home in West Pittston through a cellar window. He said large floral bushes, which he identified as laurel, were around the cellar window. As West Pittston was in another police district, the officers who were questioning the defendant knew nothing of a burglary at a doctor’s home in that community until after they checked with the local police. At the trial, evidence was introduced that between February 18 and February 23, 1961, a Doctor Murphy’s homé in West Pittston was entered through a cellar window and that large bushes of rhododéndrón, sometimes known as “great laurel,” surrounded the window through which entry was made. The house was ransacked, and over |1000 worth of jewelry stolen. No other burglary of a doctor’s home was reported to police in West Pittston during January or February 1961. At the trial the defendant denied participation in the burglary and denied making any statement about it to the police officers.
 

 In considering a motion in arrest of judgment, the court must ignore the evidence of the defendant and his witnesses which the jury had the privilege of rejecting, and must accept as correct all the evidence which supports the verdict, whether offered by the Commonwealth or the defendant, and must draw from the evidence such reasonable inferences as will support the verdict.
 
 Commonwealth v. Wright,
 
 383 Pa. 532, 536, 119 A. 2d 492 (1956);
 
 Commonwealth v. Ornato,
 
 191 Pa. Superior Ct. 581, 583, 159 A. 2d 223 (1960).
 

 The evidence establishes that there was a burglary in West Pittston and that the defendant participated in a burglary there. The jury could infer from the evidence that the burglary in which the defendant admitted participating was the burglary committed at
 
 *569
 
 Doctor Murphy’s home. The motion in arrest of judgment was properly dismissed.
 

 The appellant seeks a new trial on four grounds, none of which has any merit.
 

 In the cross-examination of one of the police officers, counsel for the defendant asked, “And that lie detector test cleared [the defendant] of all the burglaries in Old Forge, did it not?” to which the officer answered, “Well, on the burglaries in Old Forge, yes, but then he came out with the others.” When the district attorney on redirect examination asked the witness “what others?” the court, after objection, took over the questioning and brought out that no lie detector test was taken concerning the Murphy burglary. No further reference was made to “other” burglaries. Defendant’s counsel opened the door to the reference to other burglaries and the trial judge fairly clarified the facts without further reference to any “other” burglaries. The reference to the “other burglaries” is no reason for granting a new trial.
 

 The defendant was charged and acquitted of larceny. After the conviction of burglary, the defendant discovered that the statute of limitations had run on the larceny charge (but not the burglary charge) when the defendant was arrested. No effort was made to raise this point until after the verdict which acquitted the defendant of larceny and convicted him of burglary. The larceny indictment could have been quashed or taken from the jury had the proper motions been made. That no such motions were made and the larceny case was permitted to go to the jury is no reason to grant a new trial in the burglary case.
 

 There was a direct conflict between the testimony of the officers and the defendant. The officers said the defendant had admitted participation in a burglary. He said he had not made any such admission. In charging the jury, the trial judge stated that the
 
 *570
 
 defendant, who had been cross-examined about the police officers, “knew of no reason why [one of the police officers] should perjure himself”; and sometime later in the charge said, “You make up your minds as to who is telling the truth or who has committed perjury because there is perjury here.” This part of the charge was not improper. Furthermore, no specific exception was taken to it.
 

 The defendant told the police officers that Sciandra and Amantea entered the house while he served as a lookout. When the district attorney called Sciandra, defense counsel insisted that the witness “be advised of his constitutional rights to the effect that his testimony may incriminate him.” A recess was taken and counsel was assigned to-the witness. - When the court reconvened, the witness gave his name, address, said he had heard the officer’s testimony, but refused to answer whether he had been involved in the burglary on the ground “it may incriminate me.” When Amantea was called as a witness, he likewise refused to testify. The appellant claims that the district attorney knew that the two witnesses would invoke the privilege against self-incrimination. Judge Pinola, who tried the case, said in his opinion, “This is absolutely untrue.”
 

 It is immaterial whether or not the district attorney was informed that the witnesses intended to claim the privilege against self-incrimination.
 

 In
 
 Namet v. United
 
 States, 373 U.S. 179, 83 S. Ct. 1151, 10 L. ed. 2d 278 (1963), the United States Supreme Court held that it was not error for the United States Attorney to ask two witnesses incriminating questions concerning their relationship with the defendant, when he knew, that they would invoke their privilege against self-incrimination.
 

 . In the case before us, there is no indication that the witnesses, had ever claimed the privilege in any in
 
 *571
 
 terrogation concerning the burglary involved in this case. Even had they told the district attorney, that they intended to refuse to testify, calling them as witnesses would not be ground for a new trial. If the Commonwealth can be denied the right to
 
 call
 
 a witness merely because he threatens to refuse to testify on the ground of self-incrimination, the right of the Commonwealth to vital testimony can be thwarted by a witness without his ever appearing on the witness stand. Had the Commonwealth not called the alleged accomplices, the defendant undoubtedly would have argued to the jury that the Commonwealth failed to call the only known witnesses who could testify at first hand to the guilt or innocence of the defendant.
 

 The judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.